YARBROUGH *et al. v.* DONOGHUE, DEE & Co.

[99 So. 380.   No. 23869.]

(Division A. March 17, 1924.)

1. PARTNERSHIP.   *Evidence held insufficient to prove defendant a partner in business for which debt was contracted.*

   In an action on alleged partnership debt, in which the defendant claimed that he was merely a clerk in the store of the alleged copartnership and was not a partner in the business, testimony as to his declaration that he was a partner *held* insufficient to prove that he was a partner, in view of overwhelming positive testimony to the contrary.

2. PARTNERSHIP.   *Defendant held not estopped to deny that he was a partner in business to which plaintiff sold goods.*

Defendant's statement that he was a partner in the business to which plaintiff sold goods *held* not to estop plaintiff from denying that he was a member of the partnership, in the absence of a showing that his declaration was the real and influential cause of the credit extended by plaintiff, and in view of the fact that the declaration was made in May, that the goods for which the suit was brought were sold in December, and that the separate monthly purchases made during the intervening months had been fully paid for monthly.

3. Partnership. *Complainant seeking to hold defendant on partnership debt had burden of proving existence of partnership.*

In seller's action for price of goods sold to alleged copartnership, in which the defendant claimed· that he was merely a clerk and was not a partner in the business, the seller had the burden of proving the defendant a partner.

Appeal from chancery court of Lowndes county.
Hon. T. P. Guyton, Chancellor.

Bill by Donoghue, Dee & Co. against Clifford Yarbrough and others. Decree for complainant, and defendants appeal. Reversed and judgment rendered.

*Wells, Stevens & Jones,* and *M. C. Ketchum,* for appellants.

The burden of proof was upon the complainant to show an actual partnership, and this complainant has failed to do to the satisfaction of any court. These so-called "general admissions" are contradicted by the positive testimony of Clifford, and he, of all people, is best in position to know. He and his brother, T. E. Yarbrough, certainly knew the relationship between them.

There is no testimony that the complainant ever asked for a mercantile statement, or that any statement was ever given to a commercial agency, or to creditors showing that Clifford was a partner. His name did not appear on the sign, or on any letterheads, or on any documents of any kind whatever. How can the court, therefore, arrive with any degree of confidence at the conclusion that Clifford was in fact a partner. A partnership

must be shown by some kind of an agreement whereby the two Yarbroughs agreed not only to share the profits, but to share the losses of the business. No such showing has been made.

In *Bragg* v. *Geddes,* 93 Ill. 39, the court held that the evidence was insufficient to show a partnership. In the Mississippi case of *Attwood* v. *Meredith,* 37 Miss. 635, the plaintiff, Attwood, having recovered a judgment against Meredith, levied an execution on a lot of groceries and produce, and Mrs. Meredith, the wife, introduced a claimant's affidavit. There was testimony to show that V. T. Meredith was a salesman, and generally present in the operation of the business conducted under the firm name of Ranney, Grubbs and Company, and there was evidence that Meredith was recognized as a partner. The evidence in fact was very strong that Meredith was a partner. The jury found, however, in favor of Mrs. Meredith on the claimant's issue. One of the partners, Grubbs, was permitted to state in a general way whom he regarded as his partner. The court condemned this loose and general statement of one partner as to what he thought, or regarded, the court calling attention to the fact that a partner ought to be in position to know the positive facts, and to be able to state them, should he be called upon to state them.

A case very much in point is *Schultz* v. *Burger,* 64 N. Y. Supp. 686, wherein there was an effort to hold Max Burger and his wife, Carrie Burger, as partners, and jointly and severally liable. There was a judgment against the wife, Carrie, which the court on the facts reversed as to her. In the Mississippi case of *Harris* v. *Threefoot, et al.,* 12 So. 335, our court, by Judge WOOD, reversed a decree which held one, J. H. Warren, to be a member of the firm of Kossman and Company.

In *Patton & Son* v. *Griffin,* 119 Miss. 138, Patton & Son attempted to hold J. C. Griffin liable on the theory that he was a partner of one, Wood. The court held that the fact that persons are partners in one place, or in one

line of business, does not tend to prove them partners elsewhere, on a distinct trade or venture. See also *Mullins* v. *Gilligan*, 54 Pac. 1106; *Bonnaffe, et al.* v. *Fenner*, 6 S. and M. 212; *Anfenson* v. *Banks*, 180 Iowa, 1066, 163 N. W. 608.

A participation in the profits would not even be conclusive evidence of a partnership. The true test is stated by the Kansas Court in Sutton v. Schaff, 104 Kansas 282, 178 Pac. 418, citing 20 Ruling Case Law, 825, to the effect that both the sharing of profits and losses is the true test. Another test is the intention of the parties. The court below erred in holding appellant Yarbrough a partner.

*W. E. Johnson,* for appellee.

There is only one question that need be considered by the court in this case. Was Clifford Yarbrough a partner of The Riverside Grocery Company? If this question is answered in the affirmative, then it seems to me that all other questions raised on this appeal become academic and unnecessary for decision. The only purpose of the decree rendered by the lower court, and the only office it performs in so far as the same condemns the land for sale to satisfy the debt due by Clifford Yarbrough to appellees, was to guarantee something out of which to make the money claimed by appellees.

The *supersedeas* bond executed by Clifford Yarbrough in this case guarantees the payment of the debt in event the proof shows that he was a partner in the Riverside Grocery Company, and stands for and in stead of any proceedings authorized under the decree. In other words, in case this cause is affirmed, as I understand it, execution would not be issued against the land, but against Clifford Yarbrough, and the surety on his bond. The decree only affects Eugenia Murray's title to the land in so far as the appellees are concerned. Yarbrough by executing a *supersedeas* bond has made it unnecessary to consider the question of the liability of the property at-

tached. As between Yarbrough and Eugenia Murray the decree does not cancel the deed; neither does the decree affect Eugenia Murray's rights with others. Why then is it necessary to consider any question except: Was Clifford Yarbrough a partner with the man, T. E. Yarbrough? The proof shows that he was. The testimony of Mr. Scott and Mr. Calloway settles this beyond question. The chancellor's finding should therefore be upheld.

Argued orally by *J. Morgan Stevens,* for appellants.

HOLDEN, J., delivered the opinion of the court.

The suit is by a bill in chancery to subject a certain tract of land to the payment of a debt alleged to be due by appellant Clifford Yarbrough to appellee Donoghue, Dee & Co., which land was deeded by T. J. Locke to Eugenia Murray.

The bill is grounded on the claim that Clifford Yarbrough was a partner with T. E. Yarbrough in a grocery business, and that the partnership purchased from appellees a certain bill of groceries which they failed to pay for, and that Clifford Yarbrough with intent to defraud the creditor had the land conveyed to his daughter Eugenia Murray, and that the goods were sold to the partnership on the faith and representation that Clifford Yarbrough was a partner in the business and owned the land in question.

Upon a hearing of the case the chancellor decreed the title in Eugenia Murray be canceled and the land sold to satisfy the amount due by Clifford Yarbrough to the appellees, and that a personal decree for the amount be rendered against appellant Clifford Yarbrough for the balance due after the proceeds of the sale are applied to the payment of the amount of the decree. Clifford Yarbrough and Eugenia Murray appealed to this court with a *supersedeas* bond to cover the whole amount of the personal decree.

Several grounds are urged for reversal; but we shall notice only one, which is decisive of the whole case, and that is whether or not Clifford Yarbrough was in fact a partner in the grocery business which became indebted for the goods purchased from appellees. If he was not a partner, then he was not liable for the debts sued upon, and it would follow of course that the conveyance of the land to Eugenia Murray was valid and her title cannot be disturbed, and that the personal decree against Clifford Yarbrough for the amount of the debt should not have been rendered by the lower court.

On this question of whether Clifford Yarbrough was a partner in the grocery business, we have carefully reviewed and considered all the testimony introduced to establish this fact, and we think the proof offered was insufficient, in view of its weakness and the overwhelming positive testimony showing the contrary. Therefore we think the decree of the chancellor was error.

The only testimony in the record which tends to show that Clifford Yarbrough was a partner in the business is his alleged statement to a Mr. Scott, at some time or place not given, "that he (Yarbrough) was a member of the firm known as the Riverside Grocery, and he was apparently in charge of the store conducted by them." And the testimony of Mr. Calloway, long after the debt was contracted and the business had been closed out by attachment, that Yarbrough told him he had been a partner with his brother in the business. No effort was made to show the partnership existed except by the testimony above quoted.

On the other hand, there is positive proof by Yarbrough that he was not a partner in the business, but was a mere clerk at the store for his brother; that he had never stated to any one he was a partner in the business. There was no sign at the store indicating such partnership, nor partnership letter heads, stationery, or advertisements or partnership contracts introduced to show the connection of appellant, nor any other fact was proven to establish

the partnership, except the mere alleged admissions of Yarbrough, which of course the chancellor had the right to believe were made; but on cross-examination of Mr. Scott, who was connected with appellee, it appears the grocery business was owned by T. E. Yarbrough, the brother of appellant, who bought it from Mr. McClung and afterwards operated it as owner. The privilege tax license was in the name of T. E. Yarbrough.

Furthermore, it is shown that several suits filed against the grocery business by creditors in January, 1917, were all filed against T. E. Yarbrough as owner, and who conducted the business, bought goods, payment for which was made for many months before the month of December when the bill of goods was purchased for which this suit was brought. This suit was filed in August, 1918, against appellant, apparently an afterthought to hold him as a partner and subject the land to the debt. Up to that time no creditor had claimed he was a partner. No financial statement showed a partnership. None of the common evidences of copartnership were disclosed.

So, we think the positive proof showing that appellant was not a partner in the business overcomes the general uncorroborated admission of appellant when he said he was a member of the Riverside Grocery Company. Even though he loosely stated he was a partner in the business, still the positive proof in the record manifestly shows the real truth to be that he was not a partner.

Now, if the December goods had been sold to the grocery company on the reasonable representation of Yarbrough that he was a partner in the business, he might be estopped from denying the partnership, although estoppel does not seem to be specifically urged or relied upon in this case.

However, we do not think appellees' case can be saved by estoppel because it is not clear when he made the statement admitting partnership, nor that this statement of partnership was the real and influencing cause of the credit being extended to the grocery company. Not only

that, but the record shows the amount claimed in this case was for groceries sold to the company in December; whereas, the statement by Yarbrough probably was made in May previous, and the separate monthly purchases made during all of the months between May and December had been fully paid for monthly, and it does not plainly appear that the December bill was induced by any representation made by Yarbrough to Mr. Scott.

The burden of proving the existence of a partnership was upon the complainant, and the mere admission, without other corroborative proof, of such partnership, at some time unknown, is not sufficient where overwhelming positive testimony showing the real truth was introduced in the case.

Connecting a solvent person with an insolvent concern by proof of mere admission of partnership is a serious proposition, and could easily involve an innocent party for the debts of another.

The decree of the lower court is reversed, and judgment entered here for the appellant.

*Reversed, and judgment here.*